## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

**LEONARD ELDRIDGE**
c/o Hansel Law, P.C.
2514 North Charles Street
Baltimore, Maryland 21218

      *Plaintiff,*

    v.

**BALTIMORE COUNTY, MARYLAND**
Serve:  James R. Benjamin, Jr., Esq.
      County Attorney
      Historic Courthouse
      100 Washington Avenue
      Towson, Maryland 21204

and

**OFFICER HANSEL SIMPSON**
*In His Individual and Official*
*Capacity as a Correctional Officer*
Maryland Correctional Training Center
18800 Roxbury Road
Hagerstown, Maryland 21746

and

**OFFICER BRYANT**
*In Her Individual and Official*
*Capacity as a Correctional Officer*
Maryland Correctional Training Center
18800 Roxbury Road
Hagerstown, Maryland 21746

      *Defendants.*

Civil Case No.: C-03-CV-25-002845

**\*Jury Trial Demanded\***



## COMPLAINT AND JURY DEMAND

    Comes now the Plaintiff, by and through undersigned counsel, and sues the above-named

Defendants, stating as follows:

## INTRODUCTION

1)      This case arises from the unlawful, unconstitutional, and brutal attacks on Plaintiff Leonard Eldridge ("**Plaintiff**" or "**Mr. Eldridge**"), which correctional officers facilitated while Plaintiff was a pretrial detainee in custody of the Baltimore County Department of Corrections at the Baltimore County Detention Center.

2)      The correctional officers negligently, grossly negligently, intentionally, and/or with malice housed Plaintiff in a specific cell, at the request of gang members, to allow those gang members access to him so that they could attack him.

3)      The correctional officers negligently, grossly negligently, intentionally, and/or with malice unlocked and opened the door to Plaintiff's cell, allowing several inmates inside to brutally attack Plaintiff, including sexually with a weapon.

4)      Mr. Eldridge managed to survive the attack in his cell, forced his way out of his cell into the Lower Day Room, and ran to the exit door for the block where Correctional Officer Simpson was directly on the other side. At this point, the first attack was over. Mr. Eldridge told Correctional Officer Simpson that Plaintiff had just been attacked and begged and pleaded with Correctional Officer Simpson to open the door open for Plaintiff and move him to safety, but Correctional Officer Simpson would not do so. This forced Mr. Eldridge to stand out in the Lower Day Room for several minutes.

5)      In a separate incident or occurrence, about five minutes later, Mr. Eldridge was attacked again in the Lower Day Room, during which he was punched, kicked, and stabbed multiple times. Eventually, all the attackers scattered, and Mr. Eldridge made his way into the Sally Port, where he was found by correctional officers bleeding profusely.

2

6)     Mr. Eldridge was escorted to medical treatment where he was evaluated by a nurse practitioner and then transported to an outside hospital via ambulance.

7)     As a result of the facilitation of the two brutal attacks on Plaintiff, Plaintiff suffered severe physical pain and suffering, including, but not limited to, numerous stab wounds and lacerations, bruises, swelling, headaches, chest pain radiating into his left arm, bleeding and oozing from his rectum, and significant emotional pain and suffering, including, but not limited to, fear for Plaintiff's life, loss of sleep, humiliation, feeling disrespected as a man, depression, uncontrollable crying, irritability, poor anger control, hopelessness, extreme anxiety, panic attacks, hypervigilance, feeling as if gang members were following him, distrust—including his cellmate, flashbacks, nightmares, night terrors, uncontrollable thoughts, auditory hallucinations, and constantly feeling unclean even after showers.

## JURISDICTION AND VENUE

8)     This Court has jurisdiction pursuant to MD. CODE, CTS. & JUD. PROC. § 6-102, as Defendants are domiciled in the State of Maryland and/or are organized under the laws of Maryland and have their principal place of business in the State.

9)     Venue is proper in Baltimore County, Maryland, pursuant to MD. CODE, CTS. & JUD. PROC. § 6-201, because all the material events occurred in Baltimore County, Maryland.

10)     Plaintiff provided notice of his claim on May 25, 2023, which was within one year of the date of the incident subject to this lawsuit, as required by MD. CODE, CTS. & JUD. PROC. § 5-304(b) and (c), and Maryland Tort Claims Act, MD. CODE, STATE GOV'T §§ 12-101, *et seq.*, and Plaintiff is in full compliance with said Act insofar as it applies to the instant case. All conditions have been fully satisfied precedent to filing suit.

11)     The amount in controversy exceeds $75,000.

## PARTIES

12)    Plaintiff Leonard Eldridge is an adult resident of Texas.

13)    Defendant Baltimore County, Maryland ("**Defendant County**") is an entity of local government of the State of Maryland that, by virtue of the Maryland Constitution and the Baltimore County Charter, is a body corporate and politic which may sue and be sued. Baltimore County owns, and through its Department of Corrections (hereinafter "DOC"), operates the Baltimore County Detention Center (hereinafter "BCDC"). Baltimore County was responsible for the policies, practices, customs, and regulations governing and used at BCDC and for the misconduct, acts, and omissions of its employees, agents, or servants.

14)    Defendant Officer Hansel Simpson ("**Defendant Simpson**") is an adult resident of Maryland, who at all times relevant hereto was a Correctional Officer for the BCDC. Defendant Simpson's conduct referred to herein was at all times relevant to his employment, is responsible for the misconduct discussed herein, and was at all times relevant hereto acting under color of state law. Defendant Simpson is sued in his capacities as a BCDC correctional officer and individually.

15)    Defendant Officer Sergeant Bryant ("**Defendant Bryant**") is an adult resident of Maryland, and at all times relevant hereto was a Correctional Officer for the BCDC. Defendant Bryant's conduct referred to herein was at all times relevant to her employment, is responsible for the misconduct discussed herein, and was at all times relevant hereto acting under color of state law. Defendant Bryant is sued in her capacity as a BCDC correctional officer and in her capacity as an individual.

16)    All other unidentified BCDC correctional officers whose conduct is referred to herein were at all times relevant hereto employed by Baltimore County, are responsible for the

4

misconduct discussed herein, and were at all times relevant hereto acting under color of state law.

17)     Defendant Simpson, Defendant Bryant, along with additional unidentified officers, are hereinafter collectively referred to as "**Defendant Officers**."

18)     All Defendants are jointly and severally liable for damages and injuries to the Plaintiff described herein.

## FACTS COMMON TO ALL COUNTS

19)     On or about May 27, 2022, Plaintiff entered the care and custody of Defendant County at BCDC.

20)     Plaintiff was housed in the 4E Housing Unit in Cell 4, which was a two-person cell.

21)     Importantly, when Plaintiff first arrived at BCDC, he was supposed to be housed in a different cell in the 4E Housing Unit, but Defendant Bryant put him into Cell 4 at the request of inmates at BCDC that were members of the notorious Dead Man Inc. Gang (hereinafter "DMI Gang"). Upon information and belief, Defendant Bryant was aware that DMI Gang members intended to attack Plaintiff, who is black, as a result of his relationship with a white woman.

22)     DMI knew about the relationship of Plaintiff with a white woman and devised a plan to attack Plaintiff. These plans included help from correctional officers at BCDC, including, but not limited to, Defendant Bryant and Defendant Simpson.

23)     On or about June 9, 2022 at approximately 8:00 p.m., Officers Johnson and Ayisire performed door checks on the bottom tier, which included Plaintiff's Cell 4. Officers Johnson and Ayisire secured the tier and ensured that all the inmates on the bottom tier were in their cells and their doors were locked.

24)     Only the inmates from the top tier were supposed to be out of their cells for recreation at that time. All other cells were required to be closed and locked, including those on the bottom tier, which was where Plaintiff was housed.

25)     At some point after Officers Johnson and Ayisire secured the bottom tier, Defendant Simpson opened all the bottom tier doors. This occurred at some point between 8:00 p.m. and 9:00 p.m. This was against BCDC's policy—only one floor/tier was supposed to be out at a time. Defendant Simpson's purpose in opening the bottom tier doors was to permit the first attack on Plaintiff.

26)     After Plaintiff's cell door opened, he went down to Cell 9 to speak with another inmate.

27)     Around 9:30 p.m., while Plaintiff was at Cell 9, a large, white male inmate with a white tank top and light-colored sweatpants and black shoes that was holding a beverage ("**Inmate #1**") was seen exiting Plaintiff's cell. To be clear, Inmate #1 was not Plaintiff's cellmate. Inmate #1 was seen entering Plaintiff's cell again about a minute later and then exited again about ten seconds later, followed by Plaintiff's cellmate ("**Plaintiff's Cellmate**").

28)     Plaintiff's Cellmate went down to Cell 9 and told Plaintiff that he needed to speak with him. Plaintiff followed Plaintiff's Cellmate down to Cell 4 and they entered Cell 4 at approximately 9:32 p.m.

29)     Once Plaintiff and Plaintiff's Cellmate entered Cell 4, which was their assigned cell, approximately three male inmates ("**Inmates #1, #2, and #3**") started gathering outside of the cell door and were obviously watching the door. Inmates are not permitted to congregate outside of cells in this fashion. This occurred in full view of Defendant Simpson, who was charged at the time with observing the tier and ensuring the safety of inmates like Plaintiff.

6

30)     After a few minutes, Plaintiff's Cellmate started to attack him inside of Cell 4. Plaintiff started to try to get out of the cell, but then three more inmates entered the cell and joined in the attack.  Only inmates assigned to a cell are permitted inside the cell.  The three inmates who were not assigned to Cell 4 entered in full view of Defendant Simpson, who failed to intervene despite having a duty to do so.

31)     It is against BCDC's policy for correctional officers to allow any inmates into cells that they are not assigned to sleep in.  It was a violation of this policy when Defendant Simpson allowed Inmates #1, #2, and #3 to enter Cell 4.

32)     Plaintiff's Cellmate and Inmates #1, #2, and #3 were all known DMI Gang members.

33)     Plaintiff was hit, kicked, stabbed with a makeshift knife, and sexually assaulted with a makeshift knife during the attack on him in Cell 4.

34)     At approximately 9:40:02 p.m., Cell 4's door started to move like someone was trying to get out of it.  At approximately 9:40:11 p.m., Inmate #1 went into Cell 4, followed by two other white male inmates in white t-shirts.  One of them was short and stocky (hereinafter "Inmate #2"), and the other was tall and lanky (hereinafter "Inmate #3").  The door to Cell 4 closed at 9:40:32 p.m. with Plaintiff, Plaintiff's Cellmate, and Inmates #1, #2, and #3 in the cell.

35)     Another white male inmate in an orange jumpsuit ("**Inmate #4**") stood outside of Cell 4's door like he was standing guard.

36)     At approximately 9:40:47 p.m., Cell 4's door started to move like someone was trying to get out of it again.  However, Inmate #4 was standing in front of it and prevented it from opening.

7

37)     During this attack, Defendant Simpson observed or should have observed signs of the attack, including noise generated by the attack, screaming, and the movement of the door. Defendant Simpson negligently, grossly negligently, intentionally, and/or with malice failed his duty to intervene.

38)     Finally, at approximately 9:41:10 p.m., Plaintiff was able to crawl and escape Cell 4 into the Lower Day Room and run down to the exit door of the cell block.

39)     Defendant Simpson was on the other side of the window, and Plaintiff begged Defendant Simpson to open the exit door so that he could safely escape the cell block. However, Defendant Simpson negligently, grossly negligently, intentionally, and/or with malice did not do so.

40)     This forced Plaintiff to stand out in the Lower Day Room for the next four to five minutes.

41)     Inmates #1, #2, and #3 all exited Cell 4 about ten seconds after Plaintiff did and dispersed throughout the Lower Day Room. Inmate #3 had a towel stuck to his shoes that came off on the floor, as he was walking in the Lower Day Room. Defendant Simpson observed the attackers exit Cell 4. Despite observing this further violation of procedure, Defendant Simpson still negligently, grossly negligently, intentionally, and/or with malice failed to intervene.

42)     Plaintiff's Cellmate then exited Cell 4 about ten seconds after Inmates #1, #2, and #3, and he was picking up towels off the floor and throwing them away in one of the trashcans in the Lower Day Room. He went back into Cell 4 and came back out with another towel and threw it away in the same trashcan. Plaintiff's Cellmate was clearly cleaning something up inside of Cell 4 and throwing the towels he used away outside of Cell 4. He then lingered outside of Cell 4's door for about thirty seconds. Defendant Simpson also observed inmates

cleaning up after this first attack on Plaintiff and destroying evidence. Still, Defendant Simpson negligently, grossly negligently, intentionally, and/or with malice failed to intervene.

43) At approximately 9:42:50 p.m., Inmate #1, who is believed to be one of the leaders of the DMI Gang, gave an order (he is seen on camera pointing), and Plaintiff's Cellmate goes back into Cell 4. Then, at approximately 9:43:33 p.m., two inmates that were not involved in the prior attack on Plaintiff and Inmate #1 enter Cell 4. And then, several other male inmates start gathering and/or looking into Cell 4. Defendant Simpson also observed inmates not assigned to Cell 4 congregate around and/or go into Cell 4. Still, Defendant Simpson negligently, grossly negligently, intentionally, and/or with malice failed to intervene.

44) During the time that Plaintiff was standing out in the Lower Day Room, Defendant Simpson could see that Plaintiff was dripping blood but never called a code or did anything to help him.

45) Also, during the time that Plaintiff was standing in the Lower Day Room, several gang members were taunting Plaintiff.

46) To deescalate the situation, some Black inmates on the tier spoke with the DMI Gang members that were taunting Plaintiff and told them that Plaintiff would get his stuff and then leave through the exit door.

47) At approximately 9:45:27, Plaintiff walked into Cell 4 for about ten seconds and then came back out to the Lower Day Room. He was in a daze from the brutal physical and sexual assault he just suffered in Cell 4.

48) In a separate incident or occurrence, at approximately 9:45:53, Inmate #1 approached Plaintiff in the Lower Day Room and began to attack him. Several other inmates, some of whom were not involved in the first attack, joined in and chased Plaintiff into the corner

next to the Sally Port door. Plaintiff was brutally punched, kicked, and stabbed during this second attack.

49)    The second attack on Plaintiff also occurred in the view of Defendant Simpson. *Still*, Defendant Simpson negligently, grossly negligently, intentionally, and/or with malice failed to intervene.

50)    Eventually, a Code II was called for the 4E Housing Unit and the attack ended. All the attackers dispersed, and the Sally Port door was finally opened for Plaintiff Eldridge to exit to safety.

51)    As responding officers arrived in the unit, Plaintiff was standing in the Sally Port, profusely bleeding from multiple stab wounds and other injuries.

52)    Plaintiff was escorted to Medical Treatment where he was evaluated by a nurse practitioner. After evaluating Plaintiff, the nurse practitioner contacted the 911 Center to emergently transport Plaintiff to an area hospital by ambulance.

53)    As a result of these two separate, brutal attacks, Plaintiff suffered stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum.

54)    Plaintiff was unable to walk and had to use a wheelchair for five days after the two separate, brutal attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand.

55)    Since the two separate, brutal attacks on him, Plaintiff had, and continues to suffer from:  panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

56)    Later in the night on June 9, 2022, Captain Felicia Patilla and Lieutenant Timothy Davis reviewed video footage of the second attack on Plaintiff and attempted to identify the inmates that were involved.

57)    Police Officer Staines reported to BCDC and took pictures of Cells 11 and 19 and the area where the second attack on Plaintiff occurred.  At no time were any pictures taken of Cell 4, where Plaintiff was first brutally attacked and sexually assaulted.

58)    A search of the Lower Day Room was conducted, and Sergeant Kim Mason found a pen with a sharpened point in the trashcan inside the housing unit.  Plaintiff's Cellmate threw things away in that same trash can when he was cleaning up after the first brutal attack on Plaintiff in Cell 4.  Upon information and belief, this pen was used to sexually assault Plaintiff during that attack.

59)    Director Gail Watts was the Director of BCDC at the time of the two separate, brutal attacks on Plaintiff.

60)    Major Robert Alford was the major on duty at the time of the two separate, brutal attacks on Plaintiff.

61)    Captain Felicia Patilla was the captain on duty at the time of the two separate, brutal attacks on Plaintiff.

62)    Lieutenant Timothy Davis was the Kenilworth Shift Supervisor at the time of the two separate, brutal attacks on Plaintiff.

63)    Sergeant Kelly was Defendant Simpson's immediate supervisor at the time of the two separate, brutal attacks on Plaintiff.

64)    Sergeant Mason was the Zone Supervisor at the time of the two separate, brutal attacks on Plaintiff.

65)    Despite having direct and personal knowledge that DMI Gang members were planning to attack Plaintiff, Defendants Bryant and Simpson did nothing to prevent the two separate, brutal attacks, and, instead, actively worked with the DMI Gang members to facilitate these attacks against Plaintiff.

66)    Defendant County and their agents and/or employees, including the Defendant Officers, have a duty to ensure the health and welfare of all inmates in their custody.

67)    Breaching this duty to ensure the health and welfare of those in Defendant County's custody, Defendant Simpson negligently and/or grossly negligently opened the locked door to Plaintiff's cell, allowing Plaintiff's attackers to brutally attack Plaintiff twice.

68)    In the alternative, Defendant Simpson, with deliberate indifference to a manifest duty and in reckless disregard of the consequences affecting the life or property of another, opened the locked door to Plaintiff's cell, allowing Plaintiff's attackers to brutally attack Plaintiff twice.

69)    In the alternative, Defendant Simpson intentionally opened the locked door to Plaintiff's cell, allowing Plaintiff's attackers to brutally attack Plaintiff twice.

70)    In the alternative, Defendant Simpson acted with malice when he opened the locked door to Plaintiff's cell, allowing Plaintiff's attackers to brutally attack Plaintiff twice.

71)    Breaching this duty to ensure the health and welfare of those in Defendant County's custody, Defendant Bryant negligently and/or gross negligently put Plaintiff into a cell

12

that DMI Gang members wanted Plaintiff to be in so that they could brutally attack him, ultimately twice.

72)     In the alternative, Defendant Bryant, with deliberate indifference to a manifest duty and in reckless disregard of the consequences as affecting the life or property of another, put Plaintiff into a cell that DMI Gang members wanted Plaintiff to be in so that they could brutally attack him, ultimately twice.

73)     In the alternative, Defendant Bryant intentionally put Plaintiff into a cell that DMI Gang members wanted Plaintiff to be in so that they could brutally attack him, ultimately twice.

74)     In the alternative, Defendant Bryant acted with malice when she put Plaintiff into a cell that DMI Gang members wanted Plaintiff to be in so that they could brutally attack him, ultimately twice.

75)     Defendant County each had a duty to ensure correctional officers employed at BCDC were trained to conduct their duties within constitutional bounds and a duty to train, retrain, discipline and/or fire officers who failed to conduct their duties in a constitutional manner.

76)     Defendant County breached their duty to train Defendants Simpson and Bryant in the state and federal constitutional limits of their authority.  This led Defendant Bryant to believe that she could put Plaintiff into a cell that DMI Gang members wanted Plaintiff to be in so that they could brutally attack him, ultimately twice.  This also led Defendant Simpson to believe that he could unlock and open Plaintiff's cell door to facilitate a brutal attack on Plaintiff, ultimately twice.  Such a breach constitutes negligence, and/or gross negligence, and/or an intentional violation of Plaintiffs' rights and person, and/or a malicious violation of Plaintiffs' rights and person.

77)    As a direct and proximate result of Defendant Bryant's and Defendant Simpson's actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to, stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two attacks on him, Plaintiff has had, and continues to suffer from: panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

78)    As a direct and proximate result of Defendant County's actions, Plaintiff endured significant physical pain and suffering, including, but not limited to, stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two separate, brutal attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two attacks on him, Plaintiff has had, and continues to suffer from: panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

79)    Plaintiff in no way caused or contributed to the harmful actions of Defendants.

80)     All the allegations herein, however worded, are pleaded alternatively as acts of

negligence, gross negligence, intent, and/or malice, to be determined at trial by the jury.

<u>**COUNT I – AGAINST ALL DEFENDANTS**</u>
**Maryland Declaration of Rights – Articles 16, 24, 25, 26**

81)     Plaintiff adopts and incorporates by reference the allegations contained elsewhere

herein with the same effect as if herein fully set forth.

82)     Under the Maryland Declaration of Rights, Articles 16, 24, 25, and 26, inmates

have rights including, but not limited to:

a)     freedom from imprisonment and seizure of freehold, liberty and privilege

without due process, and without judgment of his peers;

b)     freedom from the deprivation of liberty without due process of the law,

and without the judgment of his peers;

c)     freedom from the abuse of power by law enforcement and correctional

officers;

d)     freedom from summary punishment; and

e)     freedom from the use of excessive force.

83)     All Defendants have a duty to protect incarcerated persons in their care.

84)     Through the conduct identified above, all Defendants violated the constitutional

duty to protect Plaintiff.

85)     The Defendants, and their agents and/or employees, engaged in activities that

violated Plaintiff's rights that are protected under the Maryland Declaration of Rights.

86)     As detailed herein, Defendants violated Plaintiff's rights by allowing, enabling,

and facilitating the attacks on Plaintiff, and encouraging and failing to prevent the attacks on

Plaintiff.

87)    The Maryland Declaration of Rights forbids the abuse of power by corrections officers, deprivation of liberty without substantive or procedural due process, and summary punishment.  These rights were denied to Plaintiff when Defendants' agents and/or employees knowingly allowed and/or facilitated the two separate, brutal attacks by other correctional inmates against Plaintiff without legal cause, excuse or justification.

88)    Plaintiff has a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, his ability to be free from unlawful and unwelcome abuse and attack by Defendants and their agents and/or employees.

89)    Plaintiff was deprived of numerous protected property and liberty interests by Defendants and their agents and/or employees.

90)    Specifically, Defendants and their agents and/or employees' actions were not for penological purposes and were committed with the intent to cause serious bodily injury and emotional pain and suffering to Plaintiff.

91)    Plaintiff was afforded less process than was due under law by Defendants and their agents and/or employees in depriving him of the rights in question.

92)    At no time relevant to this action was Plaintiff a threat to the safety of any correctional officers, himself, or others.

93)    At no time did Plaintiff resist detention or attempt to evade detention by flight or otherwise.

94)    At the time of the events complained of herein, Plaintiff had a clearly established right to be secure in his person.

95)    At the time of the events complained of herein, Plaintiff had a clearly established right to be free from abuse of power by corrections officers, deprivation of liberty without due process, and summary punishment.

96)    Any reasonable agent or employee of Defendants knew or should have known of these rights at the time of the complained-of conduct.

97)    Defendants and their agents and/or employees acted unreasonably in their conduct towards Plaintiff.

98)    Defendants and their agents and/or employees acted unreasonably in their conduct towards Plaintiff, subjecting him to abuse of power by corrections officers, deprivation of liberty without due process, and summary punishment.

99)    Defendants and their agents and/or employees were the direct cause of the excessive force suffered by Plaintiff, which caused severe physical injuries and emotional pain and suffering.

100)    Defendants and their agents and/or employees were the direct cause of the abuse of power, harassing conduct, deprivation of liberties, and summary punishment suffered by Plaintiff, which caused severe physical injuries and emotional pain and suffering.

101)    At all relevant times herein, all Defendant Officers were acting pursuant to custom, policy, decision, ordinance, widespread habit, practice, and usage in their actions against Plaintiff. Defendant County was aware of the illegal customs, policies, and actions employed by Defendant Officers.

102)    Defendants and their agents and/or employees had a duty to maintain security, prevent disturbances, and take reasonable measures to guarantee safety of prisoners, to protect them from violence at the hands of other prisoners.

103)    Defendants' agents' or employees' conduct subjected Plaintiff to atypical and significant hardships, in relation to the ordinary conditions for a prison inmate.

104)    Defendants and their agents and/or employees engaged in an activity that violated Plaintiff's rights as protected under the Maryland Declaration of Rights, subjecting Plaintiff to cruel and unusual punishment.

105)    As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to, stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two attacks on him, Plaintiff has had, and continues, to suffer from panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

106)    Defendant County is liable under the doctrine of *respondeat superior* for the constitutional violations detailed in Count I.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as justice requires including, but not limited to, declaratory and injunctive relief

declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT II – AGAINST DEFENDANT COUNTY
### Negligent Hiring, Retention, Training, and Supervision

107)    Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

108)    Defendant County had a duty to train their correctional officers in the state and federal constitutional limits of their authority.

109)    Defendant County also had a duty to use reasonable care to select employees who are competent and fit to perform the duties of a correctional officer.

110)    Defendant Officers were employees of Defendant County at all times relevant to this Complaint.

111)    Defendant County breached their duty to train their correctional officers in the state and federal constitutional limits of their authority, which led Defendant Bryant to believe that she could put Plaintiff into a cell occupied by a DMI Gang member and that DMI Gang members wanted Plaintiff to be in so that they could attack him. Also, Defendant County's breach of this duty led Defendant Simpson to believe that he could unlock and open Plaintiff's cell door to facilitate an attack on Plaintiff. Such a breach constitutes negligence, and/or gross negligence, and/or an intentional violation of Plaintiffs' rights and person, and/or a malicious violation of Plaintiffs' rights and person.

112)    Defendant County failed to use proper care in selecting, supervising, disciplining, and/or retaining individual employees.

113)    Defendant County failed to supervise and train individual employees in a manner sufficient to ensure that they would not engage in unlawful, unconstitutional, or tortious conduct.

114)  Defendant County knew or should have known that the supervision and training was inadequate to ensure that its individual employees do not engage in unlawful, unconstitutional, or tortious conduct.

115)  This negligent supervision and training led to unlawful, unconstitutional, and tortious conduct on the part of Defendant County.

116)  As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to:  stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale.  Plaintiff also reported bleeding and oozing from his rectum.  Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him.  Further, Plaintiff suffered from speech issues and numbness of his left hand.  Since the two attacks on him, Plaintiff has had, and continues, to suffer from panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as justice requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT III – AGAINST ALL DEFENDANTS
### Negligence and Gross Negligence

117)    Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

118)    Defendants had a duty to provide care, safekeeping, and protection, and, *inter alia*, not create or maintain a dangerous condition which could harm persons such as Plaintiff, who were under their control and in their custody.

119)    Defendants had a special duty to Plaintiff because of the custodial relationship between Defendants and Plaintiff and because Defendants' employees put Plaintiff in harm's way by placing him in a zone of danger.

120)    Defendants knew or should have known of a threat or risk to Plaintiff in intentionally putting Plaintiff into a cell that DMI Gang members wanted Plaintiff to be in so that DMI Gang members could attack him.

121)    Defendants knew or should have known of a threat or risk to Plaintiff in opening his cell door with armed inmates waiting outside to attack him and failing to stop the resulting attacks.

122)    Defendants breached their duty of reasonable care by creating a dangerous condition in the form of facilitating, encouraging, and/or permitting other inmates to brutally attack Plaintiff twice.

123)    These breaches of duty constitute negligence.

124)    In the alternative, these breaches of duty constitute gross negligence.

125)    As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to:  stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left

hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two separate, brutal attacks on him, Plaintiff had, and continues to suffer from, panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as justice requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT IV – AGAINST ALL DEFENDANTS
### Battery

126)    Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

127)    Under the facilitation, encouragement, and/or permission of Defendants Bryant and Simpson, agents and/or employees of Defendant County, inmates brutally attacked Plaintiff two separate times and subjected Plaintiff to severe bodily injury.

128)    The actions described herein constitute an intentional touching of Plaintiff.

129)    Plaintiff did not consent to the actions of Defendant Bryant, Defendant Simpson, or Defendant County.

130) As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to: stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two attacks on him, Plaintiff has had, and continues, to suffer from panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT V – AGAINST DEFENDANT COUNTY
### Indemnification

131) Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

132) Under the Local Government Tort Claims Act, MD. CODE, CTS. & JUD. PROC. §§ 5-301, *et seq.* (the "**LGTCA**"), a local government is liable "for any judgment against its

employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." § 5-303(b)(1).

133)    A local government may not assert any "governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection." § 5-303(b)(2).

134)    At all times relevant to this Complaint, Defendants Bryant and Simpson were "employees" as defined under the LGTCA. § 5-301(c).

135)    At all times relevant to this Complaint, Defendant County was a "local government" as defined under the LGTCA. § 5-301(d)(4).

136)    Defendant County had actual notice of Plaintiff's injuries and/or the defect or circumstances giving rise to Plaintiff's injury within one year after the injury pursuant to the LGTCA. § 5-304.

137)    The claims raised in this Complaint arise from tortious acts or omissions committed by Defendants Bryant and/or Simpson within the scope of their employment.

138)    Accordingly, Defendant County is liable to pay for any judgment entered against Defendants Bryant and Simpson in this case.

139)    In addition, this is a cause of action for declaratory judgment pursuant to MD. CODE, CTS. & JUD. PROC. § 3-409, for the purpose of determining a question of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding.

140)    Further, this is a cause of action for declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq.*, for the purpose of determining a question of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding.

24

141)    Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought," "upon the filing of an appropriate pleading."

142)    Declaratory judgment may be sought "in a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201.

143)    There exists an actual controversy of justiciable issues between Plaintiff and Defendant County within the jurisdiction of this Court, involving the rights and liabilities of the parties, with respect to indemnification of any judgment entered against Defendants Bryant and/or Simpson.

144)    Antagonistic claims are present between the Parties. These claims indicate imminent and inevitable litigation.

145)    A declaratory judgment by this Court will terminate this controversy.

WHEREFORE, Plaintiff seeks a declaration that Defendant County must pay for any judgment entered against Defendants Bryant and/or Simpson if Defendants Bryant and/or Simpson are found liable for any claim raised in this Complaint, in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees, in an amount to be determined at trial, and any other relief deemed appropriate by this Court, as justice may require.

## COUNT VI – AGAINST ALL DEFENDANTS
### CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Fourth & Fourteenth Amendment Failure to Protect

146)    Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

147) Plaintiff has a Constitutional right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from violence from other inmates and to proper steps to prevent that violence as well as a proper response from the Defendants should such violence occur.

148) Defendants made intentional decisions regarding the conditions under which Plaintiff was confined, including to house him with a DMI Gang member knowing that he would be brutally attacked, opening the door to his cell to allow the first attack, ignoring signs that these separate attacks were about to occur, ignoring the separate brutal attacks as they occurred, and failing to timely intervene during either of these separate, brutal attacks.

149) The actions and inactions of Defendants put Plaintiff at substantial risk of suffering serious harm, up to and including fear of imminent death. Defendants both knew and should have known of this risk of serious harm to Plaintiff.

150) Defendants did not take reasonable, available measures to abate or reduce the risks they created for Plaintiff, even though reasonable defendants in the circumstances would have appreciated the high degree of risk involved—making the consequences of Defendant's conduct obvious. By not taking such measures, Defendants directly and proximately caused Plaintiff's injuries.

151) At all relevant times, Defendants' conduct was objectively unreasonable.

152) The actions of Defendants were unnecessary and unjustified, bearing no rational relationship to proper correctional security measures.

153) Defendant County is liable, under the doctrine of *respondeat superior*, and as indemnitor under Maryland law, for the actions of the individual Defendants.

154)    As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to:  stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale.  Plaintiff also reported bleeding and oozing from his rectum.  Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him.  Further, Plaintiff suffered from speech issues and numbness of his left hand.  Since the two attacks on him, Plaintiff has had, and continues, to suffer from panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as justice requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT VII – AGAINST ALL DEFENDANTS
### CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Eighth Amendment Cruel and Unusual Punishment

155)    Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

156)    Plaintiff has a Constitutional right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

27

157)    Defendants, through the actions and inactions detailed above, acted to cruelly, unnecessarily, and excessively punish Plaintiff.

158)    Defendants acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline.

159)    The act[s] of Defendants caused harm to Plaintiff.

160)    The extent of Plaintiff's injuries was severe and unwarranted.

161)    There was no need or excuse for the actions of Defendants.

162)    There was no penological justification for Defendants' actions.

163)    Defendant County is liable, under the doctrine of *respondeat superior*, and as indemnitor under Maryland law, for the actions of the individual Defendants.

164)    As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to: stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two attacks on him, Plaintiff has had, and continues, to suffer from panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as justice requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

<u>**COUNT VIII – AGAINST ALL DEFENDANTS**</u>
**CIVIL RIGHTS ACT [42 U.S.C. § 1983]**
**Fourth and Fourteenth Amendment Summary Punishment**

165)    Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

166)    Plaintiff has a Constitutional right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from summary punishment and excessive force.

167)    Defendants acted in an objectively unreasonable fashion in facilitating the attacks, effectively using excessive and unwarranted force against Plaintiff by facilitating the separate, brutal attacks by other inmates.

168)    Defendants facilitated, encouraged, permitted, and failed to intervene in the separate, brutal attacks purposely and knowingly, amounting to summary punishments and uses of excessive force against Plaintiff.

169)    The uses of excessive force against Plaintiff were entirely unwarranted and, therefore, objectively unreasonable.

170)    The acts of Defendants caused harm to Plaintiff.

171)    There was no need for any force or to authorize or permit others to use force against Plaintiff.

172)    As there was no need for force, all force used was excessive.

173)    The extent of Plaintiff's injuries was extreme and unwarranted.

174)    Defendants made no effort to temper or to limit the amount of force.

175)    There was no security issue or threat calling for the use of force.

176)    Defendant County is liable, under the doctrine of *respondeat superior*, and as indemnitor under Maryland law, for the actions of the individual Defendants.

177)    As a direct and proximate result of Defendants' actions, Plaintiff suffered significant physical pain and suffering, including, but not limited to: stab wounds to the back of his left arm that was bleeding profusely, his left upper and lower arm, his left shoulder, and left hand; abrasions to both knees; anal bruising and itching; vomiting; headaches; chest pain radiating into left arm that felt like a heart attack; constipation; insomnia; and loss of appetite. Plaintiff's pain was at a 10/10—the worst possible on the pain scale. Plaintiff also reported bleeding and oozing from his rectum. Plaintiff was unable to walk and had to use a wheelchair for five days after the two attacks on him. Further, Plaintiff suffered from speech issues and numbness of his left hand. Since the two attacks on him, Plaintiff has had, and continues, to suffer from panic attacks, anxiety, difficulty sleeping, depression, and headaches, as well as severe mental and emotional anguish.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as justice requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

/s/ *Kristen Mack*

Cary J. Hansel (AIS No.: 9912150020)
Kristen M. Mack (AIS No.: 1712140017)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
kmack@hansellaw.com
*Counsel for Plaintiff*

## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

**LEONARD ELDRIDGE**
c/o Hansel Law, P.C.
2514 North Charles Street
Baltimore, Maryland 21218

   *Plaintiff,*

  v.

**BALTIMORE COUNTY, MARYLAND**
Serve: James R. Benjamin, Jr., Esq.
   County Attorney
   Historic Courthouse
   100 Washington Avenue
   Towson, Maryland 21204

and

**OFFICER HANSEL SIMPSON**
*In His Individual and Official*
*Capacity as a Correctional Officer*
Maryland Correctional Training Center
18800 Roxbury Road
Hagerstown, Maryland 21746

and

**OFFICER BRYANT**
*In Her Individual and Official*
*Capacity as a Correctional Officer*
Maryland Correctional Training Center
18800 Roxbury Road
Hagerstown, Maryland 21746

   *Defendants.*

Civil Case No.:_____

**\*Jury Trial Demanded\***

## <u>LINE REGARDING SUMMONS</u>

Dear Sir/Madam Clerk:

   Kindly accept the attached Complaint for filing, issue summons thereon, and return to undersigned counsel for service by private process.

Respectfully submitted,

HANSEL LAW, P.C.

_/s/ Kristen Mack_
Cary J. Hansel (AIS No.: 9912150020)
Kristen M. Mack (AIS No.: 1712140017)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
kmack@hansellaw.com
*Counsel for Plaintiff*